959 F.2d 232
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Yolanda PAGE, Defendant-Appellant.
 No. 91-5049.
 United States Court of Appeals, Fourth Circuit.
 Argued March 6, 1992.
Decided April 3, 1992.
 
 Appeal from the United States District Court for the Southern District of West Virginia, at Bluefield. Charles H. Haden II, Chief District Judge. (CR-90-172-1)
 Argued: Randal Wade Roahrig, Roahrig & Hatfield, Princeton, W.Va., for appellant; William Joseph Powell, Assistant United States Attorney, Charleston, W.Va., for appellee.
 On Brief: Michael W. Carey, United States Attorney, Charleston, W.Va., for appellee.
 S.D.W.Va.
 AFFIRMED.
 Before K.K. HALL, Circuit Judge, CHAPMAN, Senior Circuit Judge, and CHARLES E. SIMONS, Jr., Senior United States District Judge for the District of South Carolina, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 Yolanda Page appeals her convictions for submitting and conspiring to submit false writings to the Department of Housing and Urban Development (HUD), in violation of 18 U.S.C. §§ 1001 and 1002. We affirm.
 
 I.
 
 2
 As part of a nationwide HUD program, the Bluefield (West Virginia) Housing Authority operates a low-income apartment complex called Tiffany Manor (Tiffany). Rents at Tiffany are calculated based on household income. HUD then subsidizes the Bluefield Housing Authority to offset the low rents. The complex has a long waiting list of prospective tenants.
 
 
 3
 Appellant Yolanda Page moved into Tiffany in 1978, where she initially lived alone. In June of 1982, she married Mark Page, and they lived together at Tiffany until 1989. Both had college degrees, and both were employed--Yolanda as a bank teller, and Mark as a teacher and coach in the McDowell County, West Virginia, public schools.
 
 
 4
 Soon after their marriage, on July 19, 1982, the Pages met with the housing manager of Tiffany, Olivia Alexander. Alexander explained the way rent was calculated and the importance and requirement of reporting all household income and any changes in income. The lease also expressly imposed these requirements on tenants. The pair signed the lease in Alexander's presence.
 
 
 5
 Because rent and income are so inextricably intertwined, HUD requires tenants to sign income certification forms at least once a year, and more often if there are significant changes in income.
 
 
 6
 Yolanda signed certifications each year from 1982 to 1989. With only one exception, these certifications listed only Yolanda's income. Her husband's considerably higher wages were omitted. The Pages thus avoided approximately $38,000 in rent.
 
 
 7
 These false certifications were part of a pattern of corruption at Tiffany. Housing managers Lena LaPradd and Marie Walker had tenants, such as Page, sign blank rent certification forms. They would then fill in reduced or full income for the household in order to keep "good" tenants and get rid of "bad" ones. Walker once told Page that only her income was being used to calculate rent, to which Page replied, "Okay." Every year, copies of lease amendments (formalizing the rent recertifications) were mailed to Page. These amendments showed the false household income figures.
 
 
 8
 An investigation by the Inspector General in 1989 burst the bubble. Walker, who had by then risen to Executive Director of the Bluefield Housing Authority, quickly agreed to plead guilty to embezzling HUD funds and become a government witness. A grand jury indicted Mark Page, Yolanda Page, and Lena LaPradd. The indictment charged them with conspiracy and four substantive counts of submitting a false writing to HUD. LaPradd pled guilty to a false writing charge. The Pages went to trial. Mark Page's motion for judgment of acquittal was granted at the close of the evidence. Yolanda Page was found guilty on all counts. She was sentenced to ten months[1] of imprisonment, and was ordered to pay $38,000 in restitution.
 
 
 9
 Page appeals.
 
 II.
 
 10
 Page's theory of defense at trial was an appeal for jury-imposed equity. She tried to show that "everybody was doing it," including, most importantly, the government officials to whom she submitted the rent certifications. Certainly, as the district court held, a person who willfully defrauds the government is not less culpable because he finds a corrupt government official to be his compatriot. This faulty theory of defense is central to the relevancy issues discussed below.
 
 A.
 
 11
 Page attacks three of the district court's rulings on evidence. All of the challenged rulings are reviewed for abuse of discretion. In each case, she misstates the reasons behind the challenged ruling, erects a non-reason into a paper tiger, and then tries to slay it.
 
 
 12
 For example, Page attempted to introduce the Inspector General's report that detailed widespread corruption and mismanagement in the Bluefield Housing Authority. The district court refused to admit it into evidence. On appeal, Page busies herself arguing that the report satisfies a hearsay exception (Fed.R.Evid. 803(8)). The problem with her effort is that the district court did not exclude the report because it was hearsay. The report is not relevant.
 
 
 13
 In a similar vein, Page wished to introduce information from the files of other tenants that allegedly shows that they also cheated the government. She argues that this information shows a "habit or practice" of the Bluefield Housing Authority and is admissible under Fed.R.Evid. 406. Again, though the government does not concede that the evidence would be otherwise admissible as appellant argues, the defect of this proffered evidence is its irrelevance. A thief is not less a thief if he lives in a den of thieves.
 
 
 14
 Finally, Page objects to the introduction of her statement[2] to the government's cooperating witness, Marie Walker. She argues that these statements are "other crimes, wrongs, or acts" and are inadmissible under Rule 404. We disagree. A statement of a party is an admission, not a "wrong" or an "act." Relevant[3] statements of the defendant are admissible. Fed.R.Evid. 801(d)(2)(A).
 
 B.
 
 15
 Page also challenges the sufficiency of the evidence. Because there was enough evidence to permit a reasonable trier of fact to find her guilty, Jackson v. Virginia, 443 U.S. 307 (1979), we must reject her argument.
 
 
 16
 Alexander told Page of her duty to report income; the lease repeated the admonitions in writing (Page, a college graduate, is not illiterate). Walker told her that her husband's income was not being reported. She signed blank certification forms, and was then informed on the lease amendments of the false figures inserted later by LaPradd and Walker. A reasonable jury could find that Page knew precisely what she was doing and how she was doing it.
 
 
 17
 The convictions are affirmed.
 
 
 18
 AFFIRMED.
 
 
 
 [1]
 The sentence was split into five months in prison and five months of home confinement
 
 
 [2]
 The statement was Page's response, "Okay," to Walker's informing her that only her income was being used in the rent calculations
 
 
 [3]
 Page also offers a meritless challenge to the relevance of the statement. Inasmuch as the statement tends to prove her knowledge and intent, it is relevant to the central issue in the case